IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHANIE JOSEPH and RYAN RUTHERFORD, on behalf of themselves and similarly situated employees, | |
| Plaintiffs, | CIVIL ACTION NO. 16-1907 |
| v. | |
| QUALITY DINING, INC., and GRAYLING CORPORATION, | |
| Defendants. | |

## MEMORANDUM

**SCHMEHL, J.   /s/ JLS**                                          **March 21, 2017**

Plaintiffs, who worked as servers at Chili's restaurants operated in Pennsylvania by Defendants, and who intend to represent a class of similar plaintiffs, brought suit challenging a particular tip-pooling practice as in violation of the Fair Labor Standards Act (FLSA) and the Pennsylvania Minimum Wage Act (PMWA). Defendants moved to dismiss on the basis of arbitration agreements signed by Plaintiffs. The Court must consider several issues: questions related to which agreement documents actually apply to each lead Plaintiff; whether the Court or the arbitrator should determine the availability of class-based arbitration; if that matter is for the Court, whether class arbitration is available; and what to do about numerous opt-in plaintiffs if the lead plaintiffs' claims are dismissed in favor of individual arbitration.

Factual and Procedural Background

Because the issues at hand concern only the arbitration agreements, the facts of the underlying claims are not of great importance. Suffice it to say that Plaintiffs were servers paid below minimum wage with the difference to be made up by tips; the tip funds were pooled and shared not only by servers, but also by employees called "expediters." Plaintiffs argue this violated the FLSA and PMWA because expediters do not have sufficient interaction with customers.

Lead Plaintiffs Stephanie Joseph and Ryan Rutherford originally filed in Lehigh County, pursuing only a PMWA claim. After Defendants removed the action to this Court under the Class Action Fairness Act, Plaintiffs amended their complaint to include the FLSA claim. Defendants filed a motion to dismiss on the basis of signed arbitration agreements. Plaintiffs then filed forms signed by fifteen additional individuals (and later a sixteenth) expressing their consent under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), to become party plaintiffs in this action. Defendants also filed a motion regarding their rights to communicate with putative class members, which the Court has previously resolved. The Court heard oral argument on the motion to dismiss, and Plaintiffs have since filed a motion for conditional class certification.

Some of the key issues for the motion to dismiss are currently on appeal in other cases pending before both the Third Circuit and the United States Supreme Court. It is not clear if the Third Circuit is awaiting the Supreme Court's ruling, but briefing before the Supreme Court has been extended to at least late July; therefore, because the motion in this case has already been pending for some time, the Court thinks it best to issue a ruling now rather than delay further.

Discussion

It seems clear and agreed that the two lead Plaintiffs have valid arbitration agreements, so their claims must be dismissed in favor of arbitration.[1] But several legal issues must be resolved first: Who decides whether Plaintiffs may proceed as a class in arbitration, the Court or the arbitrator? If the Court decides, is class arbitration available or not? And finally, what happens to the claims of the sixteen opt-in plaintiffs when the lead Plaintiffs' claims are dismissed?

Before considering these legal questions, the Court must consider the threshold factual matter of what agreement documents are applicable to Plaintiffs, in particular Ms. Joseph. Defendants have offered copies of both lead Plaintiffs' two-page arbitration agreements, each of which incorporates by reference the "Company Rules for the Resolution of Employment Disputes" ("Rules"). Defendants have presented a single copy of the latter document. Plaintiffs argue that because Ms. Joseph's arbitration agreement has a computer file footer suggesting it is a 2001 version of the agreement and the Rules document Defendants have offered bears a footer marking it as a September 2002 version, the Court should conclude that Ms. Joseph was shown a different, earlier version of the Rules, even though she actually signed in 2009. The issue is important because while Mr. Rutherford's arbitration agreement (a 2012 version) expressly calls for only

---

[1] The decision of Administrative Law Judge Raymond P. Green concerning Plaintiff Rutherford's NLRB charge suggests at one point that Defendants must withdraw their motion to dismiss entirely, but the waiver of the right to proceed as a class is the issue, not the agreement to arbitrate altogether. Both Joseph's and Rutherford's versions of the arbitration agreement contain severability clauses at paragraph 9. And while the conclusion of Plaintiffs' brief asks the Court to deny the motion to dismiss, the brief nowhere argues that the two lead Plaintiffs have not at least agreed to arbitration.

3

individual arbitration, Ms. Joseph's does not and can be read to waive class arbitration only based on the class waiver in the Rules.

Because enforcement of an arbitration agreement is essentially a final determination on a factual issue, factual disputes must be decided by a summary judgment standard or go to a jury. *See Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n.9 (3d Cir. 1980). But as the very case Plaintiffs cite for use of the summary judgment standard recognizes, "'an inference based upon ... speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment.'" *Choice v. Option One Mortg. Corp.*, No. CIV.A. 02-6626, 2003 WL 22097455, at *4 (E.D. Pa. May 13, 2003) (quoting *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n. 12 (3d Cir. 1990)). Here, the idea that Ms. Joseph *may* have agreed to an older version of the Rules and that such an older version *may* not have waived class arbitration is based on speculation. Plaintiffs's theory does not explain why Defendants would create a version of the Rules in 2002 but not be using it seven years later when Ms. Joseph signed her arbitration agreement; it is at least equally reasonable that Defendants began using the revised Rules in 2002 along with the 2001 version of the arbitration agreement until that document was updated in 2012. And the older version of the Rules may also have waived class arbitration anyway. Further, both versions of the arbitration agreement provide that the employee may inspect the Rules upon request: given that Ms. Joseph would presumably have been shown the 2002 Rules if she asked to see them and that the incorporation of the Rules is valid even if she never read them, *see Friedman v. Yula*, 679 F. Supp. 2d 617, 624 n.15 (E.D. Pa. 2010), it is far too speculative to apply to Ms. Joseph an older version of the Rules that she *may* have been shown at the time she

signed, that has not been presented, and that may not even have differed in the relevant respect. It is worth noting that the present Rules also provide that the version of the Rules in effect at the time of the demand for arbitration will apply (Rules at 7-8, para. C1). All things considered, Plaintiffs have not raised a genuine issue of fact and the Court will apply the 2002 Rules to Ms. Joseph's claim.

Moving on to the main legal issues, precedent answers the first question quite clearly. An issue relating to an arbitration agreement is presumptively for the court to decide if it is a "question of arbitrability." *Opalinski v. Robert Half Int'l Inc.*, 761 F.3d 326, 330 (3d Cir. 2014) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). The Third Circuit held in *Opalinski* that "whether an agreement provides for classwide arbitration is a 'question of arbitrability' to be decided by the District Court." *Id.* at 332; *see also Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 753 (3d Cir.), *cert. denied*, 137 S. Ct. 40, 196 L. Ed. 2d 27 (2016).

The presumption that the Court decides a question of arbitrability can only be overcome if "the parties clearly and unmistakably provide otherwise." *Opalinski*, 761 F.3d at 330 (quoting *Howsam*, 537 U.S. at 83). "The burden of overcoming the presumption is onerous, as it requires express contractual language unambiguously delegating the question of arbitrability to the arbitrator. Silence or ambiguous contractual language is insufficient to rebut the presumption." *Id.* at 335 (citations omitted). In *Chesapeake Appalachia*, the Court extensively analyzed a set of leases and American Arbitration Association rules, and concluded the presumption was not overcome because the chain of incorporation by reference was too tenuous and the relevant language at the end of the chain was insufficiently concrete. *See* 809 F.3d at 758-66.

The only language in either the arbitration agreements or the Rules that might indicate a delegation of class availability to the arbitrator is found in section C8 of the Rules, "Power of the Arbitrator." That section provides in part:

> The Arbitrator will have all the powers a judge would have in dealing with any question or dispute that may arise before, during, and after the arbitration hearing, including but not limited to issues relating to the validity, enforceability, formation, or scope of these arbitration provisions, whether an enforceable arbitration agreement exists between the parties … or any other matter relating to the arbitrability of the dispute at issue. … The Arbitrator will have no power to change the lawful policies and procedures of the Company (including those applicable to the Dispute Resolution Program) …. The Arbitrator must enforce, and not deviate in any way from, these rules ….

Some of that language is quite comprehensive and suggests it is not up to the Court to decide even issues such as which version of the Rules to apply, because such issues would seem to be related to the enforceability and formation of the agreements. But of course the Court had to decide those issues because without determining that the Rules apply, the Court would not even be able to consider this very provision about the power of the arbitrator.

The language also appears to delegate all matters of arbitrability, and as the precedent makes clear, class availability is a question of arbitrability. But the language does not mention class explicitly, and the parties have engaged in at least some argument as to whether class availability is an issue of arbitrability to be decided by the court, so the blanket phrase "any other matter relating to the arbitrability of the dispute at issue" does not include class with unmistakable clarity. Further, the language says that the arbitrator cannot change lawful polices or deviate from the Rules (which, as discussed below, do waive the right to proceed as a class), so at some level the Court would have the power to determine if the arbitrator exercised his or her power unlawfully or in

6

conflict with the Rules. Although magic words are not to be required, *see Chesapeake Appalachia*, 809 F.3d at 758, it would be very easy to expressly mention class and this language does not. The Court cannot find that the issue of class availability has been clearly and unmistakably delegated to the arbitrator; therefore, the Court will consider the issue itself.

Except for the question of whether the Rules apply to Ms. Joseph, which the Court answered affirmatively above, the parties agree that the arbitration agreements, with the Rules incorporated, waive the right to proceed as a class. Section C4 of the Rules is titled "Individual Arbitration" and provides: "Only one Employee may be a party to any particular arbitration unless otherwise agreed by the parties. Each arbitration is limited to the claims of the Employee who is a party to that arbitration and shall not include claims pertaining to any other Employee unless otherwise agreed by the parties." Mr. Rutherford's version of the arbitration agreement itself also contains identical language at paragraph 4. Thus the agreements waive class proceedings.

Plaintiffs argue, however, that such a waiver is unenforceable because it violates the National Labor Relations Act. Section 7 of the Act provides: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection …." 29 U.S.C.A. § 157. Even courts that ultimately disagree with Plaintiffs' argument do not strongly oppose the initial idea that "other concerted activities" covers class-styled legal proceedings and dispute resolution. *See D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 344, 356–57 (5th Cir. 2013). Rather, the disagreement centers on the question

of whether, by prohibiting class waivers, the NLRA conflicts with the Federal Arbitration Act, which requires that arbitration agreements be enforced (with some exception). The FAA favors arbitration agreements, providing:

> A written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. This provision "requires courts to enforce agreements to arbitrate according to their terms." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012). Arbitration agreements need not be enforced, however, if applying the FAA's mandate conflicts with another statutory command, *see CompuCredit*, 565 U.S. at 99, or if the agreement is invalid as stated in the statute's own "saving clause," that is, "upon such grounds as exist at law or in equity for the revocation of any contract," *see AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

Several Circuits have held that proceeding as a class is a mere procedural right and the FAA overrides the purported NLRA prohibition of class arbitration waivers. *D.R. Horton, Inc.*, 737 F.3d at 358 (5th Cir. 2013); S*utherland v. Ernst & Young LLP*, 726 F.3d 290, 297 (2d Cir. 2013); *see also Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1052-55 (8th Cir. 2013) (finding class arbitration waivers enforceable for FLSA claims without engaging the procedural and substantive rights analysis that other courts have considered). Other Circuits and the National Labor Relations Board have come to the opposite conclusion, holding that the NLRA prohibits class arbitration waivers and does not conflict with the FAA because proceeding as a class is a substantive right, which the

FAA is not meant to disturb. *See Morris v. Ernst & Young, LLP*, 834 F.3d 975, 980 (9th Cir. 2016), *cert. granted*, 137 S. Ct. 809 (2017); *Lewis v. Epic Sys. Corp.*, 823 F.3d 1147 (7th Cir. 2016), *cert. granted*, 137 S. Ct. 809 (2017); *In Re D. R. Horton, Inc.*, 357 NLRB 2277 (2012). The Third Circuit and the Supreme Court have not yet spoken on the issue.

The NLRB has taken the position that waivers of class arbitration violate the NLRA, reasoning as follows: a class or collective action, in court or arbitration, is a protected concerted activity under Section 7 (which makes interfering with such actions an unfair labor practice under Section 8 and gives the NLRB the power to prevent such interference under Section 10, 29 U.S.C. §§ 158 and 160); prohibiting class arbitration waivers for employment claims does not conflict with the FAA because the NLRA's protection of concerted activity is a substantive right, and because the FAA's saving clause allows that an arbitration agreement may be invalid on grounds that exist at law or in equity, which includes illegality under the NLRA. *See In Re D. R. Horton, Inc.*, 357 NLRB at 2285–87.

The Fifth Circuit disagreed in its review of the NLRB's *D.R. Horton* decision, noting in part that "[t]he use of class action procedures…is not a substantive right." *D.R. Horton, Inc.*, 737 F.3d at 357. The Court relied heavily on the Supreme Court's opinion in *Concepcion*, reasoning that prohibiting *class* arbitration waivers would discourage arbitration *in general*, to an extent that is impermissible under the FAA. *Id.* at 359-60. The Court also found no sufficiently explicit evidence within the NLRA's text or related legislative history to conclude there is a congressional command to override the FAA. *Id.* at 60.

Last year, the Seventh Circuit sided with the NLRB's interpretation in *Lewis*, holding that the NLRA and FAA do not actually conflict, largely because of the saving clause. *See* 823 F.3d at 1156-57. The FAA itself provides that arbitration agreements are valid *except* "upon such grounds as exist at law or in equity for the revocation of any contract"; the Court asserted that "[i]llegality is one of those grounds." *Id.* at 1157 (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006)). Thus, because the NLRA makes class arbitration waivers in employment contracts illegal, the FAA by its own terms does not require enforcement of such agreements. *Id.* The Seventh Circuit criticized the Fifth, both for overstating the power of *Concepcion* regarding the idea that the FAA bars any provision that merely discourages arbitration, and for not making a deliberate effort to find interpretations of both Acts that harmonizes them. *Id.* at 1158. The Court separately considered the argument that the NLRA's protections are only procedural, arguing to the contrary that the protection of collective action "lies at the heart of the restructuring of employer/employee relationships that Congress meant to achieve in the statute,"[2] and that Section 7 should be understood as a substantive provision because all the other sections of the NLRA are enforcement mechanisms supporting Section 7. *Id.* at 1160. The Ninth Circuit has since agreed, also emphasizing the structure of the NLRA. *See Morris*, 834 F.3d at 986. The most notable addition in the Ninth Circuit's *Morris* opinion is the argument that the FAA is not strongly implicated in this situation because it is the agreement to bring claims individually that is at issue, not the agreement to bring them in arbitration. *See Morris*, 834 F.3d at 984 ("But the

---

[2] It is worth noting that the Seventh Circuit is somewhat critical of the Fifth Circuit's reliance on the general purpose of the FAA rather than explicit terms, while itself putting a good deal of emphasis on the general purpose of the NLRA.

10

arbitration requirement is not the problem. The same provision in a contract that required court adjudication as the exclusive remedy would equally violate the NLRA.").[3]

This Court does not find the Seventh and Ninth Circuits' reasoning persuasive. First, the Supreme Court's opinion in *Concepcion*, as recognized by the Fifth Circuit, does clearly support a strong view of the FAA's preference for enforcing arbitration agreements. *See Concepcion*, 563 U.S. at 339, 341-52. "The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *Id.* at 344 (quoting *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 469 (1989)). The opinion also suggests a fairly circumspect understanding of the sorts of grounds for invalidity represented by the FAA's saving clause. *Id.* at 339 ("This saving clause permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." (quotation omitted)). The Court gave several examples of rules limiting arbitration agreements that might hide under the heading of unconscionability, which would appear to fit within the saving clause as a basic ground for invalidity, to demonstrate the danger of an expansive understanding of the saving clause. *Id.* at 341-44. To avoid that danger, the Court implored attention to ensuring that the saving clause does not undermine the purpose of the FAA. *Id.* at 344-52. And for a substantial set of reasons related to the complexity, formality, and high stakes of

---

[3] The Ninth Circuit reiterates this argument to counter the argument made by the Fifth Circuit that prohibiting class arbitration waivers disfavors arbitration: "[T]he enforcement defense in this case does not specially 'disfavor' arbitration. … The contract here would face the same NLRA troubles if Ernst & Young required its employees to use only courts, or only rolls of the dice or tarot cards, to resolve workplace disputes—so long as the exclusive forum provision is coupled with a restriction on concerted activity in that forum." *Morris*, 834 F.3d at 989. The obvious response from the Fifth Circuit's perspective is that the complications of proceeding as a class and the incentives present when class arbitration is available do necessarily discourage arbitration.

11

classwide proceedings and the lack of expertise in class procedures among arbitrators, the Court held that "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Id.* at 344, 344-52. Even though *Concepcion* dealt with a California state-level, judicially created rule prohibiting waivers of classwide procedures rather than a federal statutory rule as with the NLRA, this statement by the Supreme Court, holding there is an impermissible conflict between a class requirement rule and the FAA, is the best guidance for this Court absent controlling precedent in the Third Circuit.[4]

Further, in this Court's view, the disagreement over the procedural or substantive nature of the right provides little support to Plaintiffs' and the NLRB's position. First, the distinction may not be completely relevant. The NLRB first raised the issue by arguing that "the Supreme Court's jurisprudence under the FAA … makes clear that the agreement may not require a party to 'forgo the substantive rights afforded by the statute.'" *In Re D. R. Horton, Inc.*, 357 NLRB at 2285 (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (U.S. 1991)). But *Gilmer* did not assert a command; it was descriptive, and merely "recognized that '[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute.'" *Gilmer*, 500 U.S. at 26 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). *Mitsubishi*, in turn, referred to the switch to arbitration instead of court as a trade of procedures. *See Mitsubishi*, 473 U.S. at 628. It is unreasonable to take the simple recognition that a party's substantive rights afforded by a statute may be equally enforced through court or arbitration and turn it into a key point of

---

[4] Another District Court within this Circuit concurs. *See Kobren v. A-1 Limousine Inc.*, No. CV 16-516-BRM-DEA, 2016 WL 6594075, at *4 (D.N.J. Nov. 7, 2016).

12

analysis mandating that "substantive rights" as a category may not be affected by an agreement to arbitrate.

Even if the substantive/procedural distinction is important, the way "substantive rights" was used in *Gilmer* and *Mitsubishi* casts doubt on the idea that the NLRA right at issue here is substantive in the right way. Those cases were talking about situations where the actual right underlying the suit (or arbitration) was created by a statute (the ADEA in *Gilmer* and the Sherman Act, federal Automobile Dealers' Day in Court Act, and Puerto Rico statutes in *Mitsubishi*). The analogous provisions in this case are the FLSA and the PMWA, which provide the rights and remedies upon which Plaintiffs' claims are based, not the NLRA, which at most says Plaintiffs may pursue those claims together with other employees. The Seventh and Ninth Circuits focus on the idea that the protection of concerted activity is "at the heart" of the NLRA's purpose, but it is the substantive purposes of the FLSA and PMWA that are most relevant here.

Moreover, being "at the heart" of a statute with other sections providing enforcement mechanisms does not mean a right is necessarily substantive rather than procedural. A procedural right can certainly be the fundamental point of a piece of legislation. For instance, if Congress passed a law requiring employers to provide employees a lunchroom snack machine meeting some dietary health standard, and included an additional provision requiring notice and opportunity for comment before changing the snack machine, that would be a substantive right supported by a procedural right; on the other hand, however, if the law simply said that snack machines may not be removed or changed without notice and comment and then included surrounding provisions establishing an agency to investigate when notice and comment have been

13

denied and providing that denying notice and comment is illegal and subject to a fine or other penalty, that would be a procedural right backed up by various enforcement mechanisms—there is no substantive entitlement as with the first example's dietary standards.[5] The existence of a central element supported by other provisions does not automatically mean the central element is substantive in nature. The ability to proceed as a class strikes this Court as a procedural device. Even concerted, collective activity generally speaking should be understood as a method, a means, a *procedure* for securing the other underlying rights, entitlements, and interests that employees wish to pursue— such as the fair, legal use of tip pooling to compensate servers paid nominally below the minimum wage that is the real substantive right in this case. In any event, this Court does not see the substantive versus procedural argument as sufficient to alter its conclusion given the weight of *Concepcion*.

Finally, because the Court finds that the lead Plaintiffs are both bound by agreements to arbitrate individually and that such agreements are not unenforceable under the NLRA, the status of the sixteen opt-in plaintiffs must be addressed. Defendants' citations on this point are sufficient to persuade the Court that dismissal of the lead Plaintiffs' claims properly terminates the case and disperses the putative class, without prejudice to the opt-in plaintiffs bringing their claims anew. *See Diaz v. Michigan Logistics Inc.*, 167 F. Supp. 3d 375, 383 (E.D.N.Y. 2016), *appeal dismissed* (July 11, 2016); *Murphy v. Glob. Response Corp.*, No. 14-62673-CIV, 2015 WL 3574346, at *5 (S.D. Fla. June 5, 2015), *appeal dismissed* (Apr. 26, 2016); *White v.*

---

[5] Without extensively considering the vast body of law concerning the Administrative Procedure Act, the APA appears to be an example of legislation that creates no substantive rights but contains many provisions supporting its central procedural protections. *See Navab-Safavi v. Broad. Bd. of Governors*, 650 F. Supp. 2d 40, 71 (D.D.C. 2009), *aff'd sub nom. Navab-Safavi v. Glassman*, 637 F.3d 311 (D.C. Cir. 2011).

14

*Baptist Mem'l Health Care Corp.*, No. 08-2478, 2011 WL 1883959, at *14 (W.D. Tenn. May 17, 2011), *aff'd*, 699 F.3d 869 (6th Cir. 2012).

Conclusion

As explained above, the Court views the version of the Rules document offered by Defendants as incorporated into the arbitration agreements of both lead Plaintiffs. Those Rules give fairly wide power over arbitrability to the arbitrator, but they do not clearly and unmistakably give the arbitrator authority to decide the availability of class procedures; therefore, the Court has the duty to make that determination. The agreements and incorporated Rules plainly purport to waive class procedures in arbitration. The Court declines to follow recent out-of-Circuit decisions holding such a waiver void under the NLRA and instead considers more persuasive the holdings of the Fifth Circuit and other courts that enforce class arbitration waivers under the FAA. The lead Plaintiffs must, therefore, proceed in individual arbitration, so their claims are dismissed and the action closed. To the extent the additional opt-in plaintiffs have brought claims, they too are dismissed without prejudice to a new filing or filings by those parties.